FILED
2013 Feb-26  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **JIM WINDWALKER,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | **Case No.: 1:12-CV-2959-VEH** |
| ] | |
| **ROBERT BENTLEY, et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION

### I.    Introduction

Plaintiff Jim Windwalker ("Mr. Windwalker") is proceeding *pro se* in this lawsuit.  Pending before the court is Defendants' Motion To Dismiss the Amended Complaint  (Doc. 21) (the "Dismissal Motion") filed on January 14, 2013.

On January 30, 2013, Mr. Windwalker filed his opposition (Doc. 24) to the Dismissal Motion.  Defendants followed with their reply (Doc. 25) on February 19, 2013.  Accordingly, the Dismissal Motion is now under submission and, for the reasons explained below, is due to be granted.

### II.    Standard

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint.  *See* Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 545 (quoting *Conley*, 355 U.S. at 47).  However at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added).  "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 129 S. Ct. at 1950-51.

2

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III.   Analysis

In his lawsuit, Mr. Windwalker asserts federal and state constitutional claims relating to the Alabama Sex Offender Registration and Community Notification Act ("ASORCNA"), Ala. Code § 15-20A-1, *et seq.* (*See generally* Doc. 16). The court addresses the plausibility of Mr. Windwalker's federal claims first.

### A.   Federal Claims

Liberally construed, Mr. Windwalker's amended complaint asserts federal constitutional violations of procedural due process,[1] *ex post facto*, equal protection, and free exercise. (*See generally* Doc. 16). The court analyzes each one separately

---

[1] To the extent that Mr. Windwalker is attempting to assert a substantive due process claim, such a theory is barred by the Eleventh Circuit's analysis of a comparable Florida sex-offender statute in *Doe v. Moore*, 410 F.3d 1337 (11th Cir. 2005). *See id.* at 1345 ("Though the Supreme Court has not addressed whether substantive due process invalidates sex offender registration statutes, we can find no history or tradition that would elevate the issue here to a fundamental right.") (citation omitted); *see also id.* at 1344 ("The circuit courts that have considered this substantive due process argument regarding sex offender registries have upheld such registration and publication requirements finding no constitutional infirmities." (citing *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (per curiam))).

below.

### 1.    Due Process

The ASORCNA is a sex-offender state statute which has the purpose of "protecting vulnerable populations, particularly children." Ala. Code § 15-20A-2(5); *see id.* ("The Legislature declares that its intent in imposing certain registration, notification, monitoring, and tracking requirements on sex offenders is not to punish sex offenders but to protect the public and, most importantly, promote child safety."). The ASORCNA sets forth various categories of criminal convictions which will subject a person to its requirements.  Ala. Code § 15-20A-3(a)-(f); *see also id.* § 15-20A-5 (listing applicable sex offenses).

In his amended pleading, Mr. Windwalker acknowledges that he falls within coverage under the ASORCNA.  (Doc. 16 at 1 ¶ 4 ("I reported to the Sheriff as required by law . . . .")).  Mr. Windwalker maintains that the registration and other requirements of the ASORCNA violate his due process rights.

*Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003), forecloses Mr. Windwalker's procedural due process attack on the ASORCNA.  More specifically, the United States Supreme Court determined in *Connecticut DPS* that a Connecticut sex-offender statute tied (akin to the ASORCNA) to a person's previous conviction did not "violate[] the Due Process

4

Clause because officials did not afford registrants a predeprivation hearing to determine whether they are likely to be 'currently dangerous.'" *Id.* at 4, 123 S. Ct. at 1162.  As the Court clarified, "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme." *Id.* at 4, 123 S. Ct. at 1163.

Because of the similarities in the statutory patterns between the ASORCNA and the Connecticut sex-offender statute, the court finds *Connecticut DPS* to be controlling precedent with respect to Mr. Windwalker's due process claim.  The court further agrees with Defendants that, in light of *Connecticut DPS*'s holding (which necessarily trumps Mr. Windwalker's reliance upon the preceding and merely only potentially persuasive decision of *Doe v. Pryor*, 61 F. Supp. 2d 1224 (M.D. Ala. 1999)), Mr. Windwalker has not and cannot state a viable procedural due process claim premised upon the ASORCNA.

### 2.    *Ex Post Facto*

Mr. Windwalker's efforts to challenge the ASORCNA on an *ex post facto* basis are similarly unavailing in light of the Supreme Court's guidance in *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003).  As a general rule, a law may constitute an *ex post facto* violation if it is intended to impose a retroactive punishment or if it has the effect of transforming "a[n] otherwise civil remedy" into "a criminal penalty."  *Id.* at 92, 123 S. Ct. at 1146-47 (quoting *Hudson v. United*

*States*, 522 U.S. 93, 100, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997)).

In *Smith*, the Supreme Court addressed for the first time whether "a sex offender registration and notification law constitutes retroactive punishment forbidden by the *Ex Post Facto* Clause." *Id.* at 92, 123 S. Ct. at 1146.  After setting forth the framework for determining whether Alaska's sex-offender statute was punitive in nature, the Court found, upon "examination [that] the Act's effects lead[] to the determination that respondents cannot show, much less by the clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme."  *Id.* at 105, 123 S. Ct. at 1154.

Here, the stated purpose of the ASORCNA is undoubtedly civil in nature and Mr. Windwalker has not alleged any facts that would support an *ex post facto* effects claim consistent with *Smith*.  *See id.* at 97, 123 S. Ct. at 1149 ("The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.").  Thus, from a pleadings standpoint, Mr. Windwalker's *ex post facto* claim fails.

Additionally, while the *ex post facto* status of the ASORCNA appears to still

be an open question, several other decisions involving challenges of the requirements of comparable sex-offender statutes persuasively suggest that the ASORCNA is constitutionally sound from an *ex post facto* standpoint.  For example, in *United States v. W.B.H.*, 664 F.3d 848 (11th Cir. 2011), the Eleventh Circuit, relying upon *Smith*, upheld the federal Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901, *et seq.* over an *Ex Post Facto* Clause challenge:

> The fit between SORNA's regulatory purpose and the means used to achieve it is not materially different from that of the Alaska statute in *Doe*.  Both statutes require registration and mandate dissemination on the internet of information regarding the whereabouts of convicted sex offenders, with the reporting requirements dependent on the category of dangerousness.  Both statutory regimes group the offenders in categories instead of making individual determinations of dangerousness.  Because *Doe* held that the regulatory scheme of the Alaska statute is not excessive in relation to its non-punitive purpose, it necessarily follows that SORNA's is not either. . . .

> For the reasons we have discussed, when it enacted SORNA Congress did not intend to impose additional punishment for past sex offenses but instead wanted to put into place a civil and non-punitive regulatory scheme.  Given that intent, the question under the *Doe* decision is whether there is "the clearest proof" that SORNA is so punitive in effect, as applied to those convicted of sex offenses under the Alabama Youthful Offender Act, as to negate the intention that it be a civil regulatory statute.  *See id.* at 92, 123 S. Ct. at 1147; *Ward*, 448 U.S. at 249, 100 S. Ct. at 2641.  That "clearest proof" is lacking, as our application of the *Doe* guideposts, *see Doe*, 538 U.S. at 97–106, 123 S. Ct. at 1149–54, makes clear.  Therefore, we reject W.B.H.'s *ex post facto* attack on SORNA's application to him.

*W.B.H.*, 664 F.3d at 859-60.

Likewise, the Eighth Circuit has rejected an *ex post facto* challenge of an Iowa sex-offender statute's residency requirements.  *See Doe v. Miller*, 405 F.3d 700, 705 (8th Cir. 2005) ("A majority of the panel further concludes that the statute does not amount to unconstitutional *ex post facto* punishment of persons who committed offenses prior to July 1, 2002, because the appellees have not established by the 'clearest proof,' as required by Supreme Court precedent, that the punitive effect of the statute overrides the General Assembly's legitimate intent to enact a nonpunitive, civil regulatory measure that protects health and safety.").

Accordingly, in light of the foregoing, the court concludes that Mr. Windwalker has not and cannot plausibly state a *Ex Post Facto* Clause claim connected to the requirements that he must adhere to under the ASORCNA.

### 3.    Equal Protection

Mr. Windwalker also has not and cannot state a viable equal protection claim. As the Eleventh Circuit explained in a decision involving the constitutionality of a Florida sex-offender statute:

> We recognize that the Supreme Court has designated several classifications as suspect and subject to heightened scrutiny under the Equal Protection Clause.  They include classifications regarding "race, alienage, national origin, gender, or illegitimacy."  *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  Here, Appellants argue that the Sex Offender Act impermissibly treats sex offenders differently from other felony offenders and that it arbitrarily assigns different registration

requirements to sub-classes of sex offenders based on parental relationship to victim, status of offender as a minor, insanity or civil commitment of the offender, and release of offender from supervision prior to enactment of the statute. Since sex offenders are not considered a suspect class in general, *see United States v. LeMay*, 260 F.3d 1018, 1030 (9th Cir. 2001), and the various sub-classifications presented by the Appellants do not implicate a suspect class, we review those classifications under a rational basis test asking whether they are "rationally related to a legitimate governmental purpose." *City of Cleburne*, 473 U.S. at 446, 105 S. Ct. at 3258.

*Doe v. Moore*, 410 F.3d 1337, 1346 (11th Cir. 2005).

Here, Mr. Windwalker has not presented any classifications or sub-classifications under the ASORCNA that would trigger heightened equal protection scrutiny. Accordingly, consistent with *Moore*, the ASORCNA is subject to the rational-basis test.

Further, pursuant to the rational-basis standard, a statute is constitutionally sufficient "when 'there is any reasonably conceivable state of facts that could provide a rational basis for' it." *Moore*, 410 F.3d at 1346 (quoting *FCC v. Beach Communications*, 508 U.S. 307, 313, 113 S. Ct. 2096, 2102, 124 L. Ed. 2d 211 (1993)). Additionally, "[a]lmost every statute subject to the very deferential rational basis . . . standard is found to be constitutional." *Moore*, 410 F.3d at 1346-47 (internal quotation marks omitted).

Against this backdrop, and given the ASORCNA's expressly incorporated

9

legislative findings articulating several reasonable bases for enacting the law, *see* Ala. Code § 15-20A-2(1)-(5), the court concludes that Mr. Windwalker has not and cannot plausibly state a rational-basis equal protection claim.

### 4.     Free Exercise

While his complaint does not clarify how the ASORCNA might burden his exercise of religious freedom, regardless, Mr. Windwalker cannot plausibly state a Free Exercise Clause claim.  In particular, the Supreme Court has made it clear that "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879, 110 S. Ct. 1595, 1600 (1990) (quoting *United States v. Lee*, 455 U.S. 252, 263, n.3, 102 S. Ct. 1051, 1058, n.3, 71 L. Ed. 2d 127 (1982) (Stevens, J., concurring in judgment)).

Further, nothing contained in the ASORCNA relates to a person's religious practice expect for the provision which <u>permits</u> a covered individual to change his name for religious reasons.  *See* Ala. Code § 15-20A-36(a) ("No sex offender shall change his or her name <u>unless the change is incident to a change in the marital status of the sex offender or is necessary to effect the exercise of the religion of the sex offender</u>.") (emphasis added).

10

Accordingly, the court concludes that Mr. Windwalker has not and cannot state a free exercise claim relating to the ASORCNA.

### B.    State Claims

As a result of the foregoing analysis, the court has decided to dismiss all of Mr. Windwalker's federal claims.  This means that the only causes of action which remain before the court are Mr. Windwalker's Alabama constitutional ones.

As Defendants point out (Doc. 21 at 12), pursuant to 28 U.S.C. § 1367(c)(3):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if– . . .
>
>> (3) the district court has dismissed all claims over which it has original jurisdiction, . . . .

28 U.S.C. § 1367(c)(3).

Exercising its discretion under § 1367(c)(3), the court declines to maintain supplemental jurisdiction over Mr. Windwalker's remaining state law claims. Accordingly, such counts are all due to dismissed without prejudice to Mr. Windwalker's right to pursue them in state court.

## IV.  Conclusion

Consistent with the above, the Dismissal Motion is due to granted, and Mr. Windwalker's federal constitutional claims are due to be dismissed with prejudice for failure to state a claim.  Further, Mr. Windwalker's state constitutional claims are due

to be dismissed without prejudice pursuant to the court's discretionary election under

§ 1367(c)(3).  The court will enter a separate dismissal order.

**DONE** and **ORDERED** this 26th day of February, 2013.


**VIRGINIA EMERSON HOPKINS**
United States District Judge